**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No.  12-cv-01774-RM

LORI M. BOHNER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1]

      Defendant.

---

## ORDER

---

      This matter is before the Court on Plaintiff Lori M. Bohner's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g).  (ECF No. 1.)  Plaintiff challenges the final decision of Defendant, Commissioner of the Social Security Administration, by which she denied Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act ("Act") respectively.  The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

      The Commissioner provided the Court with the administrative record.  (ECF Nos. 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8; 10-9.)  The parties have fully briefed the matter and it is ripe for adjudication.  (ECF Nos. 13; 16; 17.)

      For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's DIB

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

and SSI applications.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in October 2009, alleging disability as of July 28, 2008, due to restrictions arising from traumatic brain, neck, back, and shoulder injuries as well as post-traumatic stress disorder. (Admin. R. ("Tr.") at 220.) After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ which was held in November 2011. (Tr. 84, 115.) Following the hearing, the ALJ issued a decision on December 9, 2011. (Tr. 18-35.) Plaintiff requested the Appeals Council to review the ALJ's decision and such review was denied on May 22, 2012. (Tr. 4, 20.) Plaintiff timely requested judicial review before the Court. (ECF No. 1.)

### A. Background and Medical Evidence

Plaintiff was born in 1975. (Tr. 44-45.) Plaintiff completed high school and also attended four years of college. (Tr. 45.) Plaintiff has previously worked as a nanny (Tr. 51-52), an assistant manager for a market research company (Tr. 52), a sales associate (Tr. 54), a co-manager of a retail store (Tr. 55), and a self-employed market researcher for movie studios through her company Integrity Marketing (Tr. 56-57). Plaintiff was injured in an automobile accident on July 28, 2008 and subsequent to that date she has been unable to work. (Tr. 46, 220.) On October 1, 2009, Plaintiff filed a disability report alleging she is disabled as a result of traumatic brain injury, neck and back injury, shoulder injury, and post-traumatic stress disorder. (Tr. 220.)

Medical examinations immediately after the accident did not demonstrate any significant injury to Plaintiff's back, neck, or head. (Tr. 599, 610-13, 616, 630, 631, 649-50.)

Between October and December 2008, Plaintiff received chiropractic treatment from

Robin Latta, D.C., and Gregory Ingram, D.C.  (Tr. 427-32, 437).  Dr. Latta's examination

showed normal ranges of motion and full muscle strength (Tr. 433-34), but indicated some

tingling and numbness (paresthesias) in the left arm and hand (Tr. 434).

In April 2009, Joan FitzGerald, LPC, diagnosed Plaintiff as suffering from post-traumatic

stress disorder, borderline personality disorder, and ruled out traumatic brain injury.  (Tr. 448.)

Between April and June 2009, Plaintiff received prenatal care at the Center for Midwifery

and University Hospital.  (Tr. 571, 573, 581, 583-84).  Plaintiff gave birth to her second child in

May 2009.  (Tr. 47.)

In September 2009, Plaintiff went to University Hospital with complaints of severe toe

pain after a trip and fall.  (Tr. 565.)  Plaintiff fractured a toe in that fall.  (Tr. 565, 567.)  At that

time, Plaintiff reported no neck or back pain and no headaches.  (Tr. 566.)

In September 2009, Melissa Henston Psy.D., performed a mental health assessment of

Plaintiff.  (Tr. 483.)  Dr. Henston diagnosed Plaintiff as suffering from a cognitive disorder due

to mild traumatic brain injury that developed with the accident in July 2008; adjustment disorder

with mixed anxiety and depressed mood related to chronic pain due to the July 2008 accident as

well as due to homelessness and separation from one of her children.  (Tr. 490.)

Between September and November 2009, Plaintiff received medical care from Lawrence

Varner, D.O., after presenting with complaints of right shoulder pain which Plaintiff believed the

automobile accident to have caused.  (Tr. 499.)  Dr. Varner operated on Plaintiff's right shoulder

in November 2009 and a subsequent examination in January 2010 showed full-range right

shoulder motion with no obvious discomfort.  (Tr. 491, 497, 548.)

In March 2010, Linda A. Mitchell, M.D. and M.P.H., evaluated Plaintiff's physical

impairments.  (Tr. 92-94.)  Dr. Mitchell observed that Plaintiff could sit during the examination

without pain affecting her (Tr. 504); Plaintiff did not require assistance getting on and off the examination table (Tr. 504); Plaintiff was able to walk normally, rotate her neck, and move her back through a normal range of motion (Tr. 506); there was no tenderness in Plaintiff's neck or back (Tr. 507); and her strength was normal in her upper and lower body (Tr. 507). Based upon her examination of Plaintiff, Dr. Mitchell did not recommend any limitation on the number of hours Plaintiff could stand, walk, or sit during a normal eight-hour workday. (Tr. 507.)

During 2010 and 2011, Plaintiff received treatment at the Green Valley Ranch Medical Clinic ("GVRMC"). Dianne McDonald, PA-C, examined Plaintiff and observed normal musculoskeletal systems as well as good strength throughout her extremities. (Tr. 693, 691, 703, 707, 709, 711-12.) Physician Assistant ("PA-C") McDonald opined that Plaintiff experienced significant depression and anxiety, adjustment disorder, traumatic brain injury, and that Plaintiff experienced difficulty being in crowds of people. (Tr. 543.) In July 2010, PA-C McDonald found that Plaintiff could not engage in work or training. (Tr. 543, 546.) PA-C McDonald found that Plaintiff could sometimes (defined as "[c]ontinuously up to 2 hours or occasionally up to 6 hours" (Tr. 544)) sit, stand, walk, and lift up to 25 pounds, as well as reach above her shoulders, grasp with both hands, push and pull, climb stairs, perform fine finger manipulation, and use her head and neck in a stable or rotating position. (Tr. 544.) PA-C McDonald also placed an environmental restriction on Plaintiff related to her being in crowds of people (Tr. 544) and also noted that Plaintiff had difficulty with schedules and concentration (Tr. 545-56.) In September 2010, Plaintiff complained of chest, back, and neck pain as well as headaches to PA-C McDonald. (Tr. 703.) Plaintiff requested examinations to determine if she had fibromyalgia which were performed and the results negative. (Tr. 693-94, 699-700.) In December 2010, Plaintiff reported walking ten thousand steps per day. (Tr. 695.)

In April 2011, Neil Pitzer, M.D., conducted an independent medical evaluation of Plaintiff as part of her civil lawsuit regarding her automobile accident.  (Tr. 718.)  Dr. Pitzer found Plaintiff had normal strength, full range of motion in her right shoulder and back, and a normal gait and ability to walk.  (Tr. 725.)  Dr. Pitzer found that Plaintiff "[did] not meet the American College of Rheumatology criteria for the diagnosis of fibromyalgia" (Tr. 725-26.)  Dr. Pitzer opined that Plaintiff's complaints of body pain might be related to psychological factors, as they did not appear to be related to physical causes.  (Tr. 725-27.)

In May 2011, Dana Grote, PhD, performed a psychological evaluation of Plaintiff.  (Tr. 587-93.)  Dr. Grote identified that Plaintiff met certain DSM-IV criteria for cognitive disorders including adjustment disorder with mixed anxiety and depressed mood as well as posttraumatic stress disorder.  (Tr. 592.)

Prior to the administrative law hearing regarding Plaintiff's disability claim, PA-C McDonald evaluated Plaintiff's ability to engage in physical work-related activities.  (Tr. 677.)  PA-C McDonald said Plaintiff should never use her hands to feel because Plaintiff has difficulty performing fine motor skills due to her intermittent loss of feeling in her hands as well as due to her neck and back pain.  (Tr. 679.)

After the ALJ's decision, in April 2012, Dana Grote, Ph.D., opined for the first time that Plaintiff met medical listings 12.04 and 12.06 and equaled medical listing 12.02 based on her earlier May 3 to June 3, 2011.  (Tr. 735, 749.)  Also after the ALJ's decision, in February 2012, Karen Moore, LPC, completed a mental impairment questionnaire related to her examination of Plaintiff.  (Tr. 762-68.)  LPC Moore admitted that she is not a medical doctor.  (Tr. 764.)  LPC Moore did not complete the entire mental impairment questionnaire.  (Tr. 767.)

### B.    The ALJ's Decision

ALJ Paul Conaway issued his decision on December 20, 2011 denying Plaintiff DIB and

SSI.  (Tr. 18-40.)  In reaching his decision, ALJ Conaway followed the five-step sequential

evaluation process for evaluating disability claims.  (Tr. 22-34.)  ALJ Conaway found that

Plaintiff met the insured status requirements through June 30, 2011.  (Tr. 23.)  ALJ Conaway

found that Plaintiff had not engaged in substantial gainful activity since July 28, 2008, the

alleged onset date.  (Tr. 23.)  ALJ Conaway found that Plaintiff had the following severe

impairments:  right shoulder degenerative joint disease and impingement syndrome, status/post

right shoulder decompression, cervical and lumbar degenerative disc disease, cervogenic

headaches, obesity, cognitive disorder secondary to mild traumatic brain injury ("TBI"),

adjustment disorder with mixed depression and anxiety, and post-traumatic stress disorder

("PTSD").  (Tr. 23.)  ALJ Conaway found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments described in in Appendix 1 of the Social Security Regulations.  (Tr. 24-25.)  ALJ

Conaway found Plaintiff's residual functional capacity ("RFC") to be as follows:

> The claimant can lift and carry a maximum of 20 pounds occasionally and 10
> pounds frequently.  In an 8 hour workday with normal breaks, claimant can stand
> and/or walk for a total of more than 6 hours on a sustained basis, and sit for a total
> of more than 6 hours on a sustained basis.  Pushing and pulling is limited to
> maximum of 20 pounds occasionally and 10 pounds frequently, and is otherwise
> unlimited.  Reaching overhead with the right upper extremity (the claimant is
> ambidextrous) is limited to occasionally.  Considering the claimant's non-
> exertional limits from her mental impairments, she can follow simple instructions,
> sustain ordinary routines, and make simple work related decisions.  She cannot
> work closely with supervisors or coworkers, but can accept supervision and
> related to co-workers, if contact is not frequent or prolonged.  These mental limits
> are consistent with the capacity for unskilled work with occasional interpersonal
> interaction that involves primarily working with things rather than interacting
> with others.

(Tr. 25.)  ALJ Conaway found that Plaintiff is unable to perform any past relevant work.  (Tr.

33.)

Based on the vocational expert's testimony which in turn was predicated on ALJ Conaway's determinations and in consideration of Plaintiff's age, education, and work experience, ALJ Conaway found that there were jobs that existed in significant numbers in the national and state-wide economy that Plaintiff could perform — including collator, cleaner, and sorter/laundry.  (Tr. 34.)

Therefore, ALJ Conaway concluded that Plaintiff was not disabled.  (TR. 34-35.)

### C.    Procedural History

Plaintiff appealed the ALJ's decision.  (Tr. 17.)  On May 22, 2012, the Appeals Council denied Plaintiff's appeal.  (Tr. 1-5.)  Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II.    LEGAL STANDARDS[2]

### A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id*. (citation omitted).  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v.*

[2] Many C.F.R. citations are to part 404—which addresses DIB claims.  All cited regulations have parallel citations in part 416—which addresses SSI claims.

*Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (citation omitted).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (citation omitted).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citations omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (holding that "the Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal") (citation omitted).

**B.    Evaluation of Disability**

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of

the individual's income, resources, and other relevant characteristics.  42 U.S.C. § 1382(c)(1).  In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act.  42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step.  Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§

404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

## III.   ANALYSIS

Plaintiff raises several issues for consideration, including:  (1) that the ALJ's findings do not include all of Plaintiff's physical limitations contained in the medical opinions—*i.e.*, that the RFC determination is inconsistent with, *inter alia*, PA-C McDonald, Dr. Hammond, and Gregory Ingram's "noted complaints" of Plaintiff's "hand numbness and tingling" (ECF No. 13 at 15-16); (2) that the ALJ's rejection of a medical provider's medical opinion (none are identified other than for PA-C McDonald) was in legal error and the weight afforded to other opinions was not based on substantial evidence (ECF No. 13 at 16-17); and (3) that the ALJ erred in his credibility determination of Plaintiff's subjective complaints (ECF No. 13 at 17-20).

Because the Court finds that the ALJ's findings were supported by substantial evidence and properly addressed each of the medical opinions that are at issue in this appeal, the Court affirms Defendant's decision.

### A.   The RFC Determination Is Supported by Substantial Evidence and the ALJ Properly Rejected PA-C McDonald's Opinion

Plaintiff attacks the ALJ's RFC findings by contending that the ALJ failed to account for each of Plaintiff's physical limitations based upon certain medical opinions as well as improperly rejected PA-C McDonald's opinion.  (ECF No. 13 at 15-17.)

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the

claimant's] case record." 20 C.F.R. § 404.1545(a)(1).  The RFC is an assessment of the most a

claimant can do despite his or her limitations.  *Id*.  Examples of the types of evidence required to

be considered in making an RFC assessment are the claimant's medical history, medical signs,

laboratory findings, and medical source statements.  SSR 96-8p (July 2, 1996), 1996 WL

374184, at *5.  An ALJ must make "specific" RFC findings based on all of the relevant evidence

in the case record.  *See Winfrey*, 92 F.3d at 1023, 1025.

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts . . . and
> nonmedical evidence . . . the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a regular and
> continuing basis . . . and describe the maximum amount of each work-related
> activity the individual can perform based on the evidence available in the case
> record.  The *adjudicator must also explain how any material inconsistencies or
> ambiguities* in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7 (emphasis added).  The ALJ's findings regarding a claimant's RFC must

be supported by substantial evidence.  *See Hadock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.

1999).

Plaintiff challenges the ALJ's RFC determination by contending that it did not accurately

account for her hand numbness and shoulder range of motion nor did it accurately reflect the

opinions of PA-C McDonald, Dr. Hammond, and Gregory Ingram because such limitations were

not expressly adopted in the RFC.  Plaintiff contends that these omissions render the RFC

finding deficient and, accordingly, the substantial evidence test has not been met.  The Court

disagrees and finds that the substantial evidence test has been met.

In determining the scope of a claimant's RFC, the ALJ's assessment must "consider all of

[a claimant's] medically determinable impairments . . . , including [her] medically determinable

impairments that are not severe".  20 C.F.R. § 404.1545(a)(2).  An impairment is medically

determinable if it is "established by medical evidence consisting of signs, symptoms, and

laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

"Symptoms" are defined as a claimant's own subjective complaints; "signs" as observable

"anatomical, physiological, or psychological abnormalities which . . . must be shown by

medically acceptable clinical diagnostic techniques;" and "laboratory findings" as "anatomical,

physiological, or psychological phenomena which can be shown by the use of medically

acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528.

First, the RFC is consistent with Plaintiff's application for disability because the latter did

not indicate that any of the conditions of which she complains affect her ability to use her hands.

(Tr. 232.) As to Plaintiff's argument that the ALJ failed to account for a limited shoulder range

of motion, Plaintiff fails to identify how Plaintiff's shoulder range of motion is limited other than

in reaching[3]. (*See generally* ECF No. 13.) Plaintiff's argument (ECF No. 17 at 3) that the ALJ's

decision is inconsistent because he found that she suffered from right shoulder impingement

syndrome (Tr. 23) but did not find that reaching, other than overhead, is not supported by the

evidence. Plaintiff fails to identify how impingement syndrome limited Plaintiff's shoulder

motion other than overhead movement of which it is typically associated. The RFC contained a

limitation on Plaintiff's reaching overhead. (Tr. 25.) The only treating provider to identify a

restriction on reaching other than overhead, was PA-C McDonald. (Tr. 679.) For the reasons

discussed below, the ALJ appropriately discredited PA-C McDonald's opinion. And the ALJ

found that the medical evidence supported a finding a "full range of motion throughout the

shoulder." (Tr. 31, *see* Tr. 566, 725.)

---

[3] In her opening brief, Plaintiff argues that "Dr. Mitchell recommended no lifting with the right hand until further evaluation." (ECF No. 13 at 16.) The Court cautions Plaintiff not to conflate the impairment "lifting" with "reaching" based upon a shoulder limitation as Plaintiff provides no argument or authority as to how the two are related.

The ALJ found that no medically determinable impairment[4] has been established with respect to Plaintiff's use of her hands or shoulder limitation other than for reaching overhead. (Tr. 25-33.) Because the only evidence supporting Plaintiff's hand impairments or reaching other than for overhead beyond Plaintiff's own statements of her symptoms were the records and opinion of PA-C McDonald (*see* Tr. 679), which themselves were based solely on Plaintiff's subjective complaints, there were no medical "signs" or "laboratory findings" that would have permitted a finding that those impairments were medically determinable. *See* 20 C.F.R. § 404.1508. Therefore, the ALJ's finding that Plaintiff's hand impairments and right shoulder impairment (other than for reaching overhead) were not medically determinable, and that they need not be considered in formulating Plaintiff's RFC, was not in error.

1.     Rejection of PA-C McDonald's Opinion

Physician assistants are not "acceptable medical sources" within the meaning of the Social Security regulations. *See* 20 C.F.R. § 404.1513(d)(1). Only "acceptable medical sources" can provide medical opinions to the Commissioner. SSR 06-3p (Aug. 9, 2006), 2006 WL 2329939, at *2. "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. Only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight. *Id*.

Nevertheless, opinions from other medical sources other than "acceptable medical

---

[4] The Court notes that Plaintiff argues that Dr. Hammond, at one point, identified that Plaintiff suffered from "cervical spinal stenosis." (*See* ECF No. 13 at 17 (citing Tr. 654).) The Court does not find support for such an assertion in the record as that page only identifies that Plaintiff has a cervical "sprain/strain with spasm." (Tr. 654.) Thus, there is substantial evidence to support the ALJ's finding that Plaintiff does not suffer from hand or shoulder impairments resulting from cervical spinal stenosis. (*See* Tr. 654, 566-67, 507, 712, 693, 725, 688.)

sources," including physician's assistants, are evaluated under the rubric set forth in 20 C.F.R. § 404.1527(c).  2006 WL 2329939, at *4.  These factors include:  (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.  *Id*. at *3.  SSR 06-3p instructs that "the adjudicator generally should explain the weight given to opinions from these [non-acceptable medical sources], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  *Id*. at *6.  The ALJ followed this requirement by finding that PA-C McDonald's opinion was inconsistent with "the weight of evidence," her opinions "are brief and conclusory," her opinions are "not supported by objective findings" rather they are formed based upon "claimant's reports, which are not credible."  (Tr. 32.)  Therefore, the ALJ rejected PA-C McDonald's opinions.  (Tr. 32.)

PA-C McDonald's opinion (Tr. 676-85) is inconsistent with the record as a whole (Tr. 515 (no back pain in September 2008), 566 (no neck or back pain in September 2009), 506-07 (normal range of motion in back and thus, Plaintiff had no limitations on the number of hours she could stand, walk or sit), 725 (Plaintiff had normal strength and no weaknesses)), and thus was properly rejected.  *See* 20 C.F.R. § 404.1527(c)(4); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

PA-C McDonald's opinion (Tr. 678-85) does not present "objective findings" which would constitute credible evidence; rather, her opinion is based upon Plaintiff's subjective statements and thus, was properly rejected.  *See* 20 C.F.R. § 404.1527(c)(3) ("the more a medical

source presents relevant evidence to support an opinion, *particularly* medical signs and laboratory findings, the more weight we will give that opinion" (emphasis added)); *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001).

PA-C McDonald's opinion (Tr. 678-85) regarding hand and reaching limitations were "brief and conclusory" and thus, was properly rejected. *See* 20 C.F.R. § 404.1527(c)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion.")

Further, other factors, including lack of objective medical findings (Tr. 515 (no back pain in September 2008), 566 (no neck or back pain in September 2009), 506-07 (normal range of motion in back and thus, Plaintiff had no limitations on the number of hours she could stand, walk or sit), 725 (Plaintiff had normal strength and no weaknesses), 588 (Plaintiff did crafting activities and made Victorian lamps), 724 (same)) refute PA-C McDonald's opinion (Tr. 678-85) and thus, her opinion was properly rejected. *See* 20 C.F.R. § 404.1527(c)(3); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

Finally, two additional letters from PA-C McDonald were made part of the record after the ALJ's decision. (Tr. 774-75.) These letters are brief, conclusory and largely mere restatements of earlier statements. They do not alter the Court's view of the propriety of the ALJ's decision.

> **B.      The ALJ Properly Found Plaintiff Not Credible and His Assessment Is Supported by Substantial Evidence**

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted). The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints to be not credible. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ properly discounted Plaintiff's subjective complaints of pain or other symptoms. (Tr. 25-26.) First, Plaintiff's statements concerning her symptoms were not credible because they were not supported by objective medical evidence. "[A] pain-producing impairment, whether psychological or physiological in origin, must be proven by objective medical evidence before an agency decision maker can find a claimant disabled by pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) (citations omitted). In other words, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citation omitted). In assessing credibility, the ALJ properly considered the consistency of nonmedical testimony with objective medical evidence. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (citation omitted); SSR 96-7p (July 2, 1996), 1996 WL 374186 at *5-6.

The ALJ properly considered the factors set forth in SSR 96-7p. First, with regard to Plaintiff's daily activities, the ALJ noted that "[Plaintiff] typically cooked, cleaned, took care of her baby, watched TV, and attended therapy." (Tr. 32.) Second, with regard to the location, duration, frequency, and intensity of Plaintiff's pain, the ALJ noted that the pain affected Plaintiff's whole body (Tr. 26, 30) but that "no acceptable medical source can account for

claimant's extreme complaints of pain" (Tr. 30).  Third, the ALJ noted the factors that precipitate

and aggravate Plaintiff's symptoms which include:  sitting (Tr. 26), homelessness (Tr. 27), and

her daughter's removal from her custody (Tr. 27).  Fourth, the ALJ noted that Plaintiff "denied

any improvements from various treatment modalities" even though Plaintiff took Darvocet once

or twice per month, Flexeril, and other medications as needed.  (Tr. 31.)  Fifth, the ALJ noted

alternative treatments, including therapy, rest, heat, ice, and massages improved Plaintiff's

symptoms.  (Tr. 32.)

The ALJ contrasted Plaintiff's testimony at the administrative hearing (that she could lift

up to 50 pounds, walk 30 to 60 minutes at a time, sit 30 minutes at a time, stand 30 minutes at a

time, and had to lie down 3 times per day for 1 hour each time, and that she was experiencing

numbness in her hands, and suffered from debilitating headaches on occasion (Tr. 62-63, 66-67,

70-73)) with medical records and deposition testimony she had given in a civil lawsuit (Tr. 26,

30, 62-63, 66-67, 69, 70-73, 369-73 (deposition testimony regarding depression and anxiety),

459-61 (mental health records do not indicate mental impairments), 483 (normal gait), 03

(normal gait), 516 (no neurological or other significant objective findings), 598-600 (no

neurological or other significant objective findings), 615-17 (no neurological or other significant

objective findings), 653-55 (lack of objective medical findings), 409-10 (testimony regarding

when Plaintiff could walk)).

Consistent with the Social Security Ruling SSR 96-7p, the ALJ did not disregard

Plaintiff's statements about the intensity and persistence of pain or other symptoms *solely*

because they are not substantiated by objective medical evidence.  1996 WL 374186 at *5.

Rather, the ALJ properly discredited such statements because they were undercut by Plaintiff's

statements that she engaged in craft making (Tr. 31, 231, 724), her deposition testimony in which

she testified that she had memory problems but then was able to recall specific details about her online activities as well as her income that she had previously earned (Tr. 30, *see* 333-34, *see* 411-17), and objective medical findings (Tr. 31, 725-26 (finding Plaintiff did not meet the criteria for a diagnosis of fibromyalgia)).  Inconsistencies are a reasonable basis upon which to find a claimant not credible.  *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).

### C.    The Appeals Council Considered Plaintiff's Additional Evidence

Plaintiff argues that the Appeals Council erred in its failure to consider a new opinion by Dr. Grote submitted after the ALJ's decision.  (ECF No. 13 at 15, 20.)[5]  Much of this additional evidence was first created not only after the ALJ's decision, but also after the Appeals Council's first rejection of the request for review.  (*Compare* Tr. 10-12 (dated Mar. 2, 2012) *with* Tr. 735 (dated April 12, 2012), 760 (dated April 12, 2012), 770 (dated April 13, 2012), 772 (dated April 13, 2012), 774 (dated April 12, 2012), 775 (dated April 16, 2012).)

The Appeals Council considered the additional information, including Dr. Grote's opinion.  (Tr. 1-2, 4-5.)  The Appeals Council is not required to specifically discuss new evidence submitted to it.  *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006).  The Appeals Council specifically advised that it had considered Plaintiff's additional information.  (Tr. 5.)  This was all it was required to do.  It even set aside an earlier Appeals Council determination for the express purpose of considering this additional information.  (Tr. 1.)

Because the Appeals Council considered the additional information, that additional information is now part of the administrative record subject to the substantial evidence examination.  The additional evidence does not detract from the Court's finding that the ALJ's

---

[5] This matter was not argued in Plaintiff's opening brief, but simply mentioned in the conclusion to her opening brief.  (ECF No. 13 at 17.)  Thereafter, it is raised in a reply brief.  (ECF No. 17 at 1-4.)  As discussed below, the argument is waived.  *Rabon v. Astrue*, 464 F. App'x 732, 734 n.1 (10th Cir. 2012) (unpublished) (citation omitted).  Nonetheless, the Court examines whether the Appeals Council considered the additional information because the answer to that question determines the scope of the administrative record which the Court considers in reviewing the ALJ's findings.

holdings are consistent with substantial evidence.

With respect to Dr. Grote, Plaintiff argues that Dr. Grote opined, in April 2012, that Plaintiff "met Listings 12.04 and 12.06 and equaled Listing 12.02." (ECF No. 13 at 12 (citing Tr. 735).) Assuming, *arguendo*, that a Listings argument has not been waived (*see infra* Section III.D), this opinion might be said to affect the weighing of the ALJ's RFC determination—even the propriety of an RFC determination at all. Apart from this lone mention, however, no other evidence in the record supports Dr. Grote's Listings conclusions. And Dr. Grote's April 2012 opinion does not detract from the substantial evidence which supports the ALJ's conclusion for the following reasons.

First, Dr. Grote's April 2012 opinion is based upon her assessment from May 3, 2011 to June 3, 2011. (Tr. 735.) Dr. Grote's April 2012 is not based upon a new assessment of Plaintiff. Rather, the "Psychological Report" attached to Dr. Grote's April 2012 opinion (Tr. 749-55) is the same as that which was in the record before the ALJ (Tr. 587-93). Dr. Grote's April 2012 opinion does not explain why she found that Plaintiff met or equaled a Listing in 2012 when she did not so find in her prior assessment. (Tr. 735-55.) It is a "change of mind" without explanation, and thus, not entitled to weight.

Second, Dr. Grote's April 2012 opinion is suspect on multiple levels. Specifically, Dr. Grote opines in April 2012 that Plaintiff suffers from "appetite disturbance with [a] change in weight." (Tr. 738.) The Psychological Report attached to this April 2012 opinion, however, contains identical assessment notes from the July 2011 opinion to form the basis for the April 2012 finding of an "appetite disturbance." (*See generally* Tr. 749-55, 587-93.) But it contains no reference to an appetite disturbance. Dr. Grote provides no explanation for this new interpretation of old data. Dr. Grote also completed a "Mental Impairment Questionnaire (RFC

& Listings)" form in April 2012. (Tr. 757-60.) This Mental Impairment Questionnaire is also

based on Dr. Grote's 2011 report with no new examination. And the April 2012 Mental

Impairment Questionnaire (Tr. 757-60) is suspect. It is missing two pages. (*See* Tr. 757

(identified as questions 1-6), 758 (identified as questions 9-10).) Thus, the Court is missing Dr.

Grote's answers to questions 7 and 8. The Mental Impairment Questionnaire also fails to explain

how Dr. Grote's RFC assessment correlates with the Listings conclusions. And it wholly

undercuts the new Listings conclusions by stating, in explanation for "why [Plaintiff] would have

difficulty working at a regular job on a sustained basis," only as follows: "Information needs to

be obtained from a medical professional regarding the extent and severity of [Plaintiff's] various

medical conditions." (Tr. 760.)

Third, the additional evidence is contradictory. Dr. Grote's April 2012 opinion (Tr. 735-

47) and Karen Moore's (LPC) (Tr. 762-68) are not compatible despite the fact that they were

obtained fewer than two months apart. For example, Dr. Grote's April 2012 opinion states that

Plaintiff does not suffer from a sleep disturbance (Tr. 738) or loss of 15 IQ points (Tr. 736). In

contrast, LPC Moore notes that Plaintiff suffers from both of those symptoms (although the loss

of IQ is self-reported). (Tr. 763.)

With respect to LPC Moore, the Court finds that her opinion is supportive of the ALJ's

holding: that Plaintiff's medical impairments largely consist of self-reported information

without medical evidence in support. Specifically, LPC Moore states that she is "not a medical

doctor, but client talks about being limited in these [identified in the document] areas. She

describes major short-term memory issues & chronic physical pain." (Tr. 764.) Additionally,

LPC Moore did not complete the entire mental impairment questionnaire. (Tr. 767.)

**D.     Plaintiff Waived Any Argument as to (1) the ALJ's Rejecting Dr. Grote's Opinions, (2) Her Mental Infirmities, and (3) Other Evidence Submitted to the Appeals Council**

Plaintiff asserts two new arguments in her reply brief.  First, Plaintiff argues that the ALJ applied the wrong legal standard in rejecting Dr. Grote's July 2011 opinion (Tr. 587-93).  (ECF No. 17.)  Because Plaintiff did not assert this argument in her opening brief (*see generally* ECF No. 13), the Court finds this argument waived.  *Rabon v. Astrue*, 464 F. App'x 732, 734 n.1 (10th Cir. 2012) (unpublished) (citation omitted).  Further, the Court finds that Plaintiff's argument regarding the ALJ's failure to properly address her mental infirmities as waived because she did not raise it in her opening brief (*see generally* ECF No 13).  *Rabon*, 464 F. App'x at 734 n.1.  Further still, the Court finds that Plaintiff's arguments referenced in the "opinion evidence" (ECF No. 13 at 15) and conclusion (ECF No. 13 at 20) sections without development in the argument section of her opening brief (ECF No. 13 at 15-20) waived.  *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (citation omitted).

Other than as discussed previously (*see supra* Sections III.A, III.C), the Court does not address additional evidence submitted to the Appeals Council to which Plaintiff does not take issue in her arguments to the Court (*see generally* ECF Nos. 13, 17).  *Rabon*, 464 F. App'x at 734 n.1.  Specifically, because Plaintiff has not made any specific argument, the Court does not further address the opinions of (1) Dr. Grote dated April 12, 2012 (Tr. 735-60); (2) LPC Moore dated April 13, 2012 (Tr. 770); (3) Tonya Young dated April 13, 2012 (Tr. 772); (5) PA-C McDonald and Augustine Obinnah, MD, dated April 12, 2012 (Tr. 774); and (6) PA-C McDonald dated April 16, 2012 (Tr. 775).

IV.     **CONCLUSION**

Based on the foregoing, the Court:

(1)     AFFIRMS Defendant's denial of disability insurance benefits and supplemental

security income.

DATED this 20th day of April, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge